IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE HEISMAN TROPHY TRUST, | Civil Action No.: 18-9051 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CHASE LEAVITT, an individual; JOSEPH MIDDLETON, an individual; and KIMBALL DEAN PARKER, an individual | **JURY TRIAL DEMANDED** |
| Defendants. | |

## **PLAINTIFF'S COMPLAINT**

Plaintiff, The Heisman Trophy Trust ("Plaintiff" or the "Trust"), by and through its undersigned counsel, allege the following for its complaint against Defendants, Chase Leavitt, Joseph Middleton and Kimball Dean Parker (collectively, "Defendants"), based on personal knowledge and upon information and belief as appropriate:

## **INTRODUCTION**

1.  Plaintiff brings this action against Defendants under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act") for, among other things, willful infringement of Plaintiff's registered copyright; under Sections 32 – 36, 43(a) and 43(d) of the Lanham Act, 15 U.S.C. §§ 1114 – 1117, 1125(a), 1125(c), 1125(d) for, among other things, federal trademark infringement, trademark dilution, cyber-squatting and unfair competition.

## THE PARTIES

2.         Plaintiff is a trust organized and existing under the laws of the State of New York, having an office and place of business at 111 Broadway, Suite 103A, New York, New York 10006.

3.         Upon information and belief, Defendant Chase Leavitt is an individual that resides at 1739 E. Herbert Avenue, Salt Lake City, Utah 84108, who owns and/or operates websites located at the following URLs:  www.heismanwatch.com; www.heismanology.com; and www.heismancandidates.com, (the "Infringing Websites"), which regularly transact business in the state of New York.

4.         Upon information and belief, Defendant Joseph Middleton is an individual that resides at 1543 E. Browning Avenue, Salt Lake City, Utah 84105, who owns, operates, and/or assists with the operation of, the Infringing Websites, which regularly transact business in the state of New York.

5.         Upon information and belief, Defendant Kimball Dean Parker is an individual that resides at 1903 E. Herbert Avenue, Salt Lake City, Utah 84108, who owns, operates, and/or assists with the operation of, the Infringing Websites, which regularly transact business in the state of New York.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over causes of action alleging copyright infringement pursuant to Sections 501, *et seq.* of the Copyright Act and Sections 32 and 43(a) of the Lanham Act, as amended, 15 U.S.C. §§ 1125(a) and (c).  Additionally, the Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331.  The federal courts are further vested with exclusive jurisdiction in copyright and trademark cases pursuant to 28 U.S.C. § 1338(a).

7.      In addition, this Court has personal jurisdiction over Defendants pursuant to the New York "long-arm statute," C.P.L.R. § 302(a), because, upon information and belief, the Infringing Websites owned and/or operated by the Defendants regularly conduct transactions over the internet with consumers in New York, and Defendants should have reasonably expected such acts to have consequences in New York.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

**FACTUAL BACKGROUND**

**A.     The Heisman Trophy Trust**

9.      The Heisman Trophy® award is one of the most distinguished, prestigious, and recognized awards in all of sports, and perhaps the most famous of all individual awards in football.  From its first presentation over eight decades ago, through to the present, the Heisman Trophy® award has captured the attention of millions of sports fans.  Each presentation of the Heisman Trophy® award is preceded by extended anticipation and fanfare, including media coverage in the nation's leading newspapers, magazines, radio talk shows and on national television networks.

10.     Beginning in 1935, the Heisman Trophy® award has been presented each and every year. Today, each December, when the Heisman Trophy® award is presented on the ESPN television network, millions of viewers watch as the winner is announced. This exposure, year after year, has resulted in consumers recognizing the Heisman Trophy® award as emanating from a single source, the Trust.

**B.      The HEISMAN Copyright**

11.     The Trust is the exclusive copyright owner of the original sculptural work embodied in The Heisman Trophy® award.

12.     The Trust is the owner of U.S. Copyright Registration No. VAu745-820 for The Heisman Trophy dated February 9, 2007 (the "HEISMAN Copyright"), attached hereto as **Exhibit A**.

**C.      The HEISMAN Trademarks**

13.     The Heisman Trophy Trust is the owner of the following federal trademark and service mark registrations: Reg. No. 3,320,305 for the Heisman Trophy® Design; Reg. No. 3,123,538 for the Heisman Trophy® Design; Reg. No. 936,853 for the mark Heisman Memorial Trophy®, Reg. No. 936,852 for the mark Heisman Memorial Trophy and Design®, Reg. No. 1,397,161 for the mark Heisman Trophy Award®, Reg. No. 3,139,387 for the mark Heisman Trophy®, Reg. No. 3,477,047 for the mark Heisman Trophy®, Reg. No. 1,397,160 for the mark Heisman®, Reg. No. 3,388,826 for the mark Heisman®, Reg. No. 3,311,769 for the mark Heisman®, and Reg. No. 3,331,298 for the mark Heisman®, (collectively, the "HEISMAN Marks"). Each of the above registrations is valid and subsisting and long pre-date any use by Defendants, and many of the registrations are incontestable. True and correct copies of pages from the United States

Patent and Trademark Office's website showing each of the HEISMAN Marks are attached as **Exhibit B**.

14. The Trust has also acquired common law trademark rights through extensive use of its registered and unregistered trademarks.

15. For decades, the Trust, or its predecessors-in-interest, has used the HEISMAN Marks to promote excellence in college football, high school football, and goods and services associated with football and the Heisman Trophy® award.

16. The HEISMAN Marks have been and continue to be the subject of intense promotional activities and media coverage, much of that media coverage being entirely unsolicited.

17. In addition to the substantial amount of unsolicited media coverage, the Trust spends annually in excess of $650,000.00 in advertising and promoting the Heisman Trophy® award and the HEISMAN Marks. These efforts include, but are not limited to, a national press conference, the televised Heisman Trophy® award announcement and presentation, the Heisman "Fan Vote," the Wendy's High School Heisman Scholarship Program, the Annual Heisman Memorial Trophy Dinner and the production of the Annual Heisman Journal.

18. The Trust also licenses third parties to use the HEISMAN Marks and the HEISMAN Copyright. For example, the Trust has maintained long-standing licensing relationships with such well-known companies as Nissan Motor Co. Ltd./Nissan North America, Inc., ESPN, Inc., Wendy's International, Inc., and the Collegiate Licensing Company, a division of IMG, to use some or all of the HEISMAN Marks and the HEISMAN Copyright. These authorized licensees use the HEISMAN Marks and HEISMAN Copyright in a number of different fashions such as (1) in association with being an official sponsor of the Heisman Trophy® award; (2) in connection with a television show, ESPN Game Day, which tracks the accomplishments of

potential winners of the Heisman Trophy® award and televises the live presentation of the Heisman Trophy® award; (3) in connection with a "HEISMAN WATCH" that appears on ESPN.com; (4) on different types of apparel, both at retail and to colleges and universities across the country; and (5) in association with the Wendy's High School Heisman award.

19. All of these uses, in combination with the Trust's own direct uses, have resulted in tremendous exposure of the HEISMAN Marks to the consuming public, to the point where these marks are now famous.

20. The Trust is a Section 501(c)(3) federally recognized charitable organization which generates substantial income from licensing the HEISMAN Marks, amounting to approximately $26,600,000.00 during the past five (5) years which helps to support the Trust's charitable missions.  In 2017 alone, the Trust donated in excess of $2,000,000.00 to worthwhile charities, including but not limited to, the annual Heisman Humanitarian Award, most recently awarded to golf legend Ernie Els in recognition of his work with those afflicted with Autism.  A true and correct copy of a list of organizations supported, in part, by the Trust is attached hereto as **Exhibit C**.

21. The race for the Heisman Trophy® award culminates each year with a gathering of the Heisman Trophy® award candidates, along with many of the past winners of the Heisman Trophy® award, in New York City for what has come to be known as "Heisman Weekend." During this weekend, the announcement of the current year's winner is announced on national television.  Millions of viewers across the nation watch as the year's premier college football player is announced as the Heisman Trophy® award winner.  The Heisman Trophy® award is formally delivered to the winner a few days later at a black tie dinner, generally attended by over 1,200 people.

22. The history, tradition and integrity of the Heisman Trophy® award is second to no other award in collegiate sports, and it is one of the most famous awards in all of sports.

23. The Trust also owns and uses the domain name "Heisman.com" to operate a website located at www.heisman.com. This website has been active and used to promote the HEISMAN Copyright, the HEISMAN Marks and the goods and services identified in the Trust's federally owned trademark and service mark registrations and applications since at least as early as June 25, 1997, long before the existence of Defendants' Infringing Websites. True and correct copies of pages from the Heisman.com website are attached hereto as **Exhibit D**. The Trust also maintains other domain names, including, but not limited to, www.heismantrophy.com, www.heismanmemorialtrophy.com, and www.heisman.teamfanshop.com.

D. **The HEISMANWATCH.COM Website and Related Accounts**

24. Upon information and belief, HeismanWatch.com is a website, owned, operated and/or promoted by Defendants, that purports to offer information and analysis, along with Podcasts and other materials, relating to the Heisman Trophy® award (the "Heisman Watch Website").

25. Defendants also offer a podcast, entitled, "Heisman Watch Podcast," which is made available for consumers to download both on the Heisman Watch Website and through Apple's iTunes store.

26. Upon information and belief, Defendants also own and/or operate numerous social media accounts related to the Heisman Watch Website, including, but not necessarily limited to, a Facebook account (@heismanwatch), a copy of representative printouts from this account is attached as **Exhibit E**; a Twitter account (@Heismanology1), a copy of representative printouts from this account is attached as **Exhibit F**; a Google+ account (Heisman Watch), a copy of representative printouts from this account is attached as **Exhibit G**; and a Pinterest account

(Heisman Watch), a copy of representative printouts from this account is attached as **Exhibit H**, (collectively the "Heisman Watch Social Media Accounts), links to which are provided on the HeismanWatch.com website.

27.     Upon information and belief, Defendants registered the Heisman Watch Website domain, launched the Heisman Watch Podcast, and each of the Heisman Watch Social Media accounts with full knowledge of the Trust's ownership of the famous HEISMAN Marks and based upon the popularity and recognition among the consuming public.

28.     The Heisman Watch Website, the Heisman Watch Podcast, and the Heisman Watch Social Media Accounts each have made and/or are currently making unauthorized, unlawful and infringing use of the HEISMAN Copyright and the HEISMAN Marks, along with other marks and images that are substantially similar thereto.  Historically, the Heisman Watch Website displayed a large image of the Heisman Trophy® on its home page, which completely dominated the entire page.  *See* **Exhibit J**.

29.     The Heisman Watch Website, the Heisman Watch Podcast, and the Heisman Watch Social Media Accounts are accessible in New York, and have been accessed and/or downloaded by New York residents.

**E.     Defendants' Conduct**

30.     As detailed above, the Heisman Watch Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts all prominently feature names, words, marks, and images that are identical or confusingly similar to the HEISMAN Marks and the HEISMAN Copyright, both historically and currently.  Copies of the current HeismanWatch.com website are attached hereto as **Exhibit I**; Copies of archival examples of the HeismanWatch.com website dated to May 25, 2017 and October 21, 2017, which, among other things, show Defendants'

prominent use of unauthorized images of the HEISMAN Copyright, are attached hereto as **Exhibit J**.

31. Upon information and belief, Defendants began using the HEISMAN Marks and the HEISMAN Copyright, or words, marks and images confusingly similar thereto, on or about January 9, 2014, which is well after the Trust began using its distinctive marks and well after those distinctive marks had achieved wide recognition among the consuming public and become famous.

32. Upon information and belief, Defendant Chase Leavitt is also the owner of at least two other domain names that incorporate the HEISMAN Marks – heismanology.com and heismancandidates.com. Neither of these domain names is being used in connection with independent websites. Each domain merely redirects visitors to the main HeismanWatch.com website.

33. The Trust has never authorized Defendants to use the HEISMAN Marks, or to copy, transmit or distribute unauthorized images depicting the HEISMAN Copyright, in violation of the Trust's federally-registered trademarks and copyright.

34. Upon information and belief, based upon the prominence with which the HEISMAN Marks and HEISMAN Copyright were and are displayed, Defendants' unauthorized use of the HEISMAN Marks in connection with the HeismanWatch.com Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts is a deliberate attempt to capitalize on the fame and notoriety of the HEISMAN Marks and HEISMAN Copyright. In doing so, Defendants' uses are likely to confuse and deceive consumers into believing that there is a connection between Defendants, the HeismanWatch.com Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts and the Trust, which does not exist. Indeed,

Defendants' uses are likely to confuse and deceive consumers into believing that there is the same connection between Defendants and the Trust as there is, for example, between the Trust and ESPN, who is an actual licensee of the Trust and publishes a "Heisman Watch" on its ESPN.com website.

35. Defendants' infringing uses of the HEISMAN Mars and HEISMAN Copyright in connection with the Heisman Watch Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts have created, upon information and belief, a valuable asset for Defendants.

36. Further, by unlawfully copying, transmitting, displaying and distributing unauthorized reproductions of images of the Heisman Trophy® award, Defendants have, and are, violating the Trust's exclusive rights to reproduce, distribute and otherwise exploit the HEISMAN Copyright.

37. The HeismanWatch.com Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts are not licensed, authorized, sponsored, endorsed, or otherwise approved by the Trust.

38. The HEISMAN Marks have been in use by the Trust continuously and extensively since long before Defendants' began the infringing uses alleged in this Complaint.

39. The HeismanWatch.com Website, and the services offered by Defendants through the HeismanWatch.com Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts compete with services offered or licensed by the Trust to other parties, and are offered through the same channels of trade, including, but not limited to, the "Heisman Watch" list published by ESPN, a licensee of the Trust.

40. By effectively depriving the Trust of the exclusive right to the goodwill and other value inherent in and associated with the HEISMAN Marks and of the Trust's exclusive copyright rights, the likelihood of confusion, mistake and deception fostered by Defendants' unauthorized uses of the HEISMAN Marks and the HEISMAN Copyright has caused, and is continuing to cause, irreparable harm to the Trust.

41. Upon information and belief, Defendants' actions constitute willful infringement of the HEISMAN Marks and the HEISMAN Copyright.

## COUNT ONE
### (Infringement of the HEISMAN Copyright)

42. The Trust repeats and realleges the allegations of Paragraphs 1–41 as though fully set forth herein.

43. The Heisman Trophy® award sculpture covered by the HEISMAN Copyright is highly original and contains creative expression.

44. As such, the Heisman Trophy® award is an original work copyrightable under 17 U.S.C. § 102(a).

45. The Trust owns all right, title, and interest in and to the HEISMAN Copyright, and owns a valid federal copyright registration for the HEISMAN Copyright. *See* **Exhibit A**.

46. As owners of the HEISMAN Copyright, the Trust has the exclusive right to (1) reproduce images of the Heisman Trophy® award, (2) publicly display the Heisman Trophy® award; and 3) distribute copies of the Heisman Trophy® award pursuant to Section 106 of the Copyright Act, 17 U.S.C. § 106.

47. Upon information and belief, Defendants have for years willfully copied, displayed and distributed copies of the Heisman Trophy® award on a consistent and systematic basis, without the Trust's authorization or consent.

48. Defendants were not authorized by the Trust to copy, publicly display, and/or distribute copies of the Heisman Trophy® award.

49. Upon information and belief, Defendants willfully infringed the copyright in the Heisman Trophy® award by acting with knowledge that its actions constituted infringement, or at least with reckless disregard of the possibility that the conduct complained about constitutes infringement.

50. Defendants acts violate the Trust's exclusive rights under § 106 of the Copyright Act of 1976, 17 U.S.C. § 106, as amended, and constitute willful infringement of the Trust's copyright in the Heisman Trophy® award. Defendants past and continuing copying, transmitting, displaying and distribution of images of the Heisman Trophy® award constitutes a willful, deliberate and ongoing infringement of the Trust's copyrights, causing irreparable harm and damage to the Trust.

51. The Trust has no adequate remedy at law.

## COUNT TWO
### (Federal Trademark Infringement)

52. The Trust repeats and realleges the allegations of Paragraphs 1–51 as though fully set forth herein.

53. Defendants' unauthorized use of the federally protected HEISMAN Marks and/or other marks and terms that are confusingly similar thereto is likely to cause confusion, deception, and mistake among consumers by creating the false and misleading impression that Defendants, the Heisman Watch Website, the Heisman Watch Podcast, and the Heisman Watch Social Media Accounts that feature the HEISMAN Marks and/or other marks and terms that are confusingly

similar thereto, are affiliated with, connected to, licensed by or otherwise associated with the Trust, or enjoy the Trust's sponsorship, endorsement or approval, which is not the case.

54. Defendants have used marks identical to or confusingly similar to the HEISMAN Marks in connection with the Heisman Watch Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts without the Trust's consent or approval, in violation of 15 U.S.C. § 1114.

55. Upon information and belief, Defendants are using the HEISMAN Marks, or other terms and marks confusingly similar thereto, with full knowledge that the HEISMAN Marks are associated exclusively with the Trust and exclusively designate the Trust's products and services.

56. Upon information and belief, Defendants' conduct is willful and was undertaken with the intent to appropriate the Trust's goodwill in the HEISMAN Marks.

57. Defendants' actions have caused and, unless restrained by this Court, will continue to cause irreparable injury to the Trust.

58. The Trust has no adequate remedy at law.

## COUNT THREE
**(Trademark Dilution)**

59. The Trust repeats and realleges the allegations of Paragraphs 1–58 as though fully set forth herein.

60. The actions of Defendants alleged above constitute dilution by blurring of the distinctive quality of, and good will associated with, the Trust and the famous HEISMAN Marks in violation of the Federal Trademark Dilution Act of 1995, as amended, 15 U.S.C. § 1125(c).

61. Defendants' actions are impairing, and will continue to impair, the distinctiveness of the Trust's famous marks and the public's exclusive identification of the HEISMAN Marks by lessening their capacity to identify and distinguish the services and goods offered and sold by the Trust under the HEISMAN Marks.

62. Defendants' actions have caused and, unless restrained by this Court, will continue to cause irreparable injury to the Trust.

63. The Trust has no adequate remedy at law.

### COUNT FOUR
#### (False Designation of Origin, False and Misleading Descriptions and Representations, and Unfair Competition)

64. The Trust repeats and realleges the allegations of Paragraphs 1–63 as though fully set forth herein.

65. The actions of Defendants alleged above constitute false designations of origin, false and misleading descriptions and representations and unfair competition in violation of Section 43(a) of the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a).

66. The Defendants' past and continued use of the HEISMAN Marks and/or marks that are confusingly similar thereto in connection with the Heisman Watch Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts is likely to cause confusion, deception and mistake by creating the false and misleading impression that these websites and accounts are affiliated with, approved or endorsed by, licensed or sponsored by, connected or otherwise associated with The Trust, when no such connection exists.

67. The actions of Defendants alleged above have caused and, unless restrained by this Court, will continue to cause irreparable injury to the Trust.

68. The Trust has no adequate remedy at law.

# COUNT FIVE
### (Cyberpiracy/Cybersquatting Relating to the Domain Name heismanwatch.com)

69. The Trust repeats and realleges the allegations of Paragraphs 1–68 as though fully set forth herein.

70. At the time Defendants registered the Heisman Watch Website domain, the HEISMAN Marks were already famous, distinctive and well-known to the consuming public.

71. Defendants' domain name, "heismanwatch.com," is confusingly similar to the Trust's domain name, "heisman.com," and Defendants' unauthorized use of "heismanwatch.com" is a bad faith attempt to benefit from the famous HEISMAN Marks and the domain name "heisman.com."

72. Upon information and belief, Defendants adopted and are using the domain name "heismanwatch.com" with full knowledge that the HEISMAN Marks and the domain name "heisman.com" are solely associated by the public with the Trust, and chose the Heisman Watch Website domain for the purpose of trading upon the notoriety of the HEISMAN Marks.

73. By reason of the foregoing, Defendants have violated, and are continuing to violate, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

74. As a result of Defendants' conduct, the Trust has and will continue to sustain substantial damages and irreparable injury unless enjoined by this Court.

75. The Trust has no adequate remedy at law.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**PRAYER FOR RELIEF**

WHEREFORE, the Trust demands judgment against Defendants on the foregoing claims as follows:

(1) That Defendants, their agents, subsidiaries, alter egos, successors, assigns, servants, attorneys and affiliates and all persons acting by, through, or in concert with any of them, be permanently enjoined from:

    a) infringing any copyrights of the Trust in any manner, and from copying, exhibiting, transmitting, displaying, distributing or preparing derivative works of the Heisman Trophy® award and the HEISMAN Copyright;

    b) using the HEISMAN Marks or any other copy, reproduction or colorable imitation or simulation thereof on or in connection with any goods or services offered by Defendants, including, but not limited to, the HeismanWatch.com Website, the Heisman Watch Podcast and the Heisman Watch Social Media Accounts;

    c) applying to register, registering or maintaining in the U.S. Patent and Trademark Office or the trademark office of any state any mark consisting of or including, in whole or in part, the term HEISMAN, any of the HEISMAN Marks, or any term that is a simulation, copy, reproduction, foreign equivalent or colorable imitation thereof;

    d) using the HEISMAN Marks, alone or with other terms, or any term that is a simulation, copy, reproduction, foreign equivalent, or colorable imitation thereof, in or as a part of any domain name, keyword, metatag, or other internet search or

        search engine optimization term in connection with any web site of Defendants, or otherwise to market, promote or advertise Defendants' products or services;

     e) using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with any goods or services offered by Defendants that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to or dilutive of the HEISMAN Marks;

     f) using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with any goods or services offered by Defendants that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by the Trust, or are sponsored or authorized by or in any way connected or related to the Trust; and

     g) passing off, palming off, or assisting in passing off or palming off, the Defendants' website, or any other goods or services, including the Heisman Watch Podcast and the Heisman Watch Social Media Accounts, as those of the Trust, or one of its licensees, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

(2) Directing that Defendants immediately disable any and all websites whose domain name consists of or incorporates the term HEISMAN, any of the HEISMAN Marks, the HEISMAN Copyright, or any term that is a simulation, copy, reproduction, foreign equivalent, or colorable imitation thereof or that are used to display or promote any goods or services using the HEISMAN Marks or the HEISMAN Copyright.

(3) Directing Defendants to immediately request the transfer of ownership of the domain names "heismanwatch.com," heismanology.com," and "heismancandidates.com" to the Trust.

(4) That Defendants be required to deliver up for impoundment and for destruction all items, signs, advertising and promotional materials, stationary and any other materials in the possession, custody or control of Defendants that are found to adopt or to infringe any of the HEISMAN Marks and/or the HEISMAN Copyright, or that otherwise unfairly compete with the Trust or its goods and services

(5) That Defendants be required to pay to the Trust such actual damages as they have sustained and/or statutory damages as a result of Defendants' copyright infringement pursuant to 17 U.S.C. § 504, which should be increased due to Defendants' willful infringement pursuant to 17 U.S.C. § 504(c)(2);

(6) That based upon Defendants' intentional use of the HEISMAN Marks and the intentional effort to pass off Defendants' services as those of the Trust, Defendants be required to account for and disgorge to the Trust all gains, profits, and advantages derived from its trademark and copyright infringement pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117, including treble damages;

(7) That the Court enter judgment against Defendants in favor of the Trust's claims, including pre-judgment and post-judgment interest on any monetary award, as allowed by law;

(8) That the Court enter judgment against Defendants finding that its unlawful copying, displaying, transmitting, and distribution of images of the Heisman Trophy® award is willful;

(9) That Defendants be ordered to pay to the Trust its costs in this action along with reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

(10) That the Trust be granted such other, further and different relief as the Court deems just and proper.

Respectfully submitted,

Dated:  October 3, 2018

By: /s/ James M. Gibson

James M. Gibson (JG9234)
David A. Jones (DJ3831)

POWLEY & GIBSON, P.C.
304 Hudson Street, Suite 305
New York, New York 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085

jmgibson@powleygibson.com
dajones@powleygibson.com

Attorneys for Plaintiff
THE HEISMAN TROPHY TRUST